444 So.2d 939 (1984)
Robert A. PRESTON, Appellant,
v.
STATE of Florida, Appellee.
No. 61475.
Supreme Court of Florida.
January 19, 1984.
Rehearing Denied February 27, 1984.
*941 Joan H. Bickerstaff, Melbourne, Florida, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Sean Daly, Asst. Atty. Gen., Daytona Beach, for appellee.
ADKINS, Justice.
This is an appeal from a judgment of the Eighteenth Judicial Circuit, Seminole County. The court adjudicated the appellant, Robert Anthony Preston, guilty on counts of premeditated murder, felony murder committed in the course of a robbery, felony murder committed during the course of a kidnapping, robbery, and kidnapping. The appellant was sentenced, following the jury's recommendation, to death on the premeditated murder count. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction and the sentence.
The evidence at trial established the following facts. Early in the afternoon on January 9, 1978, the nude and mutilated body of Earline Walker was discovered in an open field in Seminole County by a detective of the Altamonte Springs Police Department. The victim's body had sustained multiple stab wounds and lacerations resulting in near decapitation.
Earline Walker was employed as a night clerk at a convenience store and had been discovered missing from the store at approximately 3:30 A.M. when an officer of the Altamonte Springs Police Department made his regular patrol. The officer also found that the sum of $574.41 was missing from the store.
The appellant, Preston, was arrested on the following day on an unrelated charge. While he was in the custody of the Seminole County Sheriff, a deputy recovered a light brown pubic hair from Preston's belt buckle. Police also found a jacket of Preston's and several detached food stamp coupons in Preston's bedroom at his mother's house the day after his arrest during a search conducted after the police had received Preston's mother's consent. Comparison of the serial numbers on the food stamps recovered from the wastebasket in Preston's bedroom with those on two coupon booklets turned over to the police by an employee of the convenience store showed four matching coupons. In addition, fracture pattern analysis confirmed the coupons had been used at the convenience store to make purchases several days before the murder. No latent fingerprints were obtained from these sources.
Analysis revealed that the pubic hair recovered from Preston's belt and another *942 discovered on his jacket could have originated from the victim. Blood samples taken from the victim and Preston were compared with two stains found on Preston's jacket. The stains proved to be of the same blood type and same enzyme group as those of the victim. In processing the victim's automobile, which had been found abandoned on the day of the murder, several usable latent fingerprints were obtained. One was identified as being Preston's.
Prior to trial, the appellant challenged the admissibility of the evidence obtained from his bedroom. The trial court granted the motion to suppress. The state filed an interlocutory appeal in the Fourth District Court of Appeal, which transferred that case to this Court. We declined jurisdiction and remanded the cause to the Fifth District Court of Appeal for a decision. State v. Preston, 376 So.2d 3 (Fla. 1979). In State v. Preston, 387 So.2d 495 (Fla. 5th DCA 1980), the district court reversed the trial court's order suppressing the evidence. The court specifically held that Preston's mother had the authority to give consent to the search. Id. at 497. Accordingly, the fruits of the search were received in evidence at appellant's trial following a second suppression hearing and over defense objection.
As his first point on appeal, Preston contends that valid consent had not been given by his mother to search his room and, therefore, introduction of the jacket and the food stamp coupons at trial was improper. The state contends that the Fifth District's decision on this issue is the "law of the case" and thus, is no longer open for consideration by this Court.
We do recognize the general rule that all points of law which have been adjudicated become the "law of the case." Greene v. Massey, 384 So.2d 24, 28 (Fla. 1980). However, an appellate court does have the power to reconsider and correct erroneous rulings notwithstanding that such rulings have become the law of the case. Strazzula v. Hendrick, 177 So.2d 1, 4 (Fla. 1965). Reconsideration is warranted only in exceptional circumstances and where reliance on the previous decision would result in manifest injustice. When the Fourth District transferred the interlocutory appeal in this case to this Court, we stated that interlocutory appeals under article V, section 3(b)(3) of the constitution are confined to orders "passing on a matter" which on final judgment would be appealable to this Court. State v. Preston, 376 So.2d 3, 4 (Fla. 1979). We noted that routine interlocutory orders, such as the suppression order at issue here, could be appealable to this Court if a conviction is had and a death sentence imposed. Id. For these reasons, we declined jurisdiction to hear the appeal at that time. We now find that we do have jurisdiction of this cause and that reconsideration of the suppression issue is proper. Section 921.141(4), Florida Statutes (1981), mandates automatic and full review of a judgment of conviction resulting in imposition of the death penalty. This Court has determined that the statute requires that "[i]n capital cases, the court shall review the evidence to determine if the interest of justice requires a new trial." Fla.R.App.P. 9.140(f). The interest of justice, substantive due process requirements and Florida's constitutional and statutory scheme of death penalty review jurisdiction support our decision to review this issue.
We now turn to the merits on this point. The first prong of appellant's argument is that the Fifth District Court of Appeal erred in finding that Preston's mother had sufficient joint access and dominion over her son's room to authorize its search. Appellant relies on three cases to support this contention. First, he argues that United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), and this Court's decision in Silva v. State, 344 So.2d 559, 562 (Fla. 1977), hold that when a third party gives permission to search they must possess common authority over or other sufficient relationship to the premises or effects sought to be inspected to justify a warrantless search. This common authority is decided on the basis of the following criteria: 1) the individual's *943 reasonable expectation of privacy in the area; 2) whether others generally had access to the area; and/or 3) whether the objects searched were the personal effects of the individual unavailable to consent. 344 So.2d at 563. In addition, appellant relies on People v. Nunn, 55 Ill.2d 344, 304 N.E.2d 81 (1973), cert. denied, 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 108 (1974), for the proposition that mere access to premises to clean is insufficient access upon which to find authority to consent to its search. Appellant maintains that since Preston's mother only had access to her son's room for cleaning purposes she lacks the requisite authority to consent.
The district court utilized the standard enunciated in Matlock. The Court's opinion stated:
The mother here had access for purposes of doing laundry. The jacket, an article of clothing, was left out in the open. The food stamps were found in a wastebasket, another area over which the mother had access. In addition, there is no reasonable expectation of privacy in regard to articles thrown into the garbage or abandoned. This was not a closet or a bureau drawer, and we respectfully disagree with the trial court. We hold, based on all of the facts and circumstances in the record before us, that the mother did have equal access to the areas where these particular articles were found.
387 So.2d at 497 (citations omitted). The Fifth District Court of Appeal's reasoning clearly comports with the criteria we established in Silva. People v. Nunn can be distinguished from the instant case. In Nunn, the Illinois Supreme Court invalidated the search of a son's room because, even though his mother had access to the room to clean it, the son had locked the door when he left before the search and had told his mother not to let anyone enter. The court found it apparent from the precautions taken that the son believed the locked room would not be entered. 304 N.E.2d at 86. No such precautions or other exhibition of expectation of privacy by Preston in those articles which were left out in the open in his room are apparent from the facts established here. Preston was obviously aware of his mother's access to the particular items seized here as well as anything within the regular scope of her cleaning activities. Thus, we agree with the district court of appeal's conclusion that he had no reasonable expectation of privacy in those items.
The second prong of appellant's argument is that Mrs. Preston did not voluntarily consent to the search. Appellant states in his brief that there is a strong suggestion in the record that Mrs. Preston's consent was the product of mere acquiesance or submission to authority. We find no basis for this contention. Whether a consent to search was in fact voluntarily given is a question of fact to be determined from the totality of all the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); Chesnut v. State, 404 So.2d 1064, 1065 (Fla. 1981). We find the record was sufficient for the trial court to conclude that Mrs. Preston's consent was voluntary.
Finally, appellant argues that his mother's consent was conditioned upon her being present during the search and that, therefore, it could not be conducted until after five o'clock in the afternoon. The trial court made the factual determination that this condition was not placed by Mrs. Preston on her consent. We find evidence exists in the record to support this conclusion. The district court's decision admitting the evidence seized will be upheld.
As his second point of error, appellant alleges that the trial court erred by failing to grant his motions for judgment of acquittal. Appellant's argument is that the record fails to contain sufficient evidence of the element of premeditation to sustain Preston's conviction for first-degree murder. The appellant admits that the record contains compelling evidence but that it is solely circumstantial.
*944 Premeditation can be shown by circumstantial evidence. Sireci v. State, 399 So.2d 964, 967 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982); Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). Whether or not the evidence shows a premeditated design to commit a murder is a question of fact for the jury. Larry v. State, 104 So.2d 352, 354 (Fla. 1958). In Larry v. State, this Court stated:
Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it in so far as the life of his victim is concerned. No definite length of time for it to exist has been set and indeed could not be.
Id. (citations omitted).
There is substantial evidence from which premeditation could have been inferred by the jury. The victim sustained multiple stab wounds. The nature of the injuries she sustained were particularly brutal. There was almost a complete severance of her neck, trachea, carotid arteries and jugular vein. The medical examiner stated the murder weapon was probably a knife of four or five inches in length. Such deliberate use of this type of weapon so as to nearly decapitate the victim clearly supports a finding of premeditation.
Considering all reasonable inferences which the jury could draw from the appellant's statements and the nature and manner of the wounds inflicted on the victim, we cannot conclude that the determination of the trial court was erroneous.
As his next contention appellant submits that the trial court erred in failing to instruct the jury on the defense of insanity. Appellant's brief argument is basically that his prolonged use of drugs caused him to be insane at the time of the murder. Appellant relies on this Court's decision in Cirack v. State, 201 So.2d 706 (Fla. 1967), and argues that a Cirack type jury instruction should have been given.
In Cirack this Court recognized the type of insanity induced by the long and continued use of "intoxicants" which would produce a "fixed and settled frenzy or insanity either permanent or intermittent." 201 So.2d 709 (citations omitted). See also Askew v. State, 118 So.2d 219 (Fla. 1960); Cochran v. State, 65 Fla. 91, 61 So. 187 (1913). But, when a single instance or episode of voluntary intoxication impairs a defendant's judgment and ability to distinguish between right and wrong it will not support the complete defense of insanity.
The burden is on the defendant to place in evidence matters that show his insanity. Parkin v. State, 238 So.2d 817, 822 (Fla. 1970). It is proper to give the appropriate charges on the issue of insanity where there is substantial, though conflicting, evidence. Cochran v. State, 61 So. at 190. We do not believe that substantial evidence exists in the record to justify reversal of the trial court's refusal to instruct on insanity. Dr. Vaughan, the appellant's own expert witness, testified that Preston did not suffer from any mental infirmity, disease or defect. He also testified that he did not observe, in his examination of Preston, any fixed and settled insanity either permanent or intermittent. Appellant argues that, nevertheless, lay testimony presented supports an insanity defense. We find this argument to be unsupported by the record.
The fourth point raised on appeal is whether the trial court properly applied the aggravating and mitigating factors of section 921.141(5) and (6), Florida Statutes (1981), in arriving at his decision to impose the death penalty. The trial judge found four aggravating and no mitigating factors under the death penalty statute.
*945 The first circumstance found applicable was section 921.141(5)(b), which reads:
The defendant was previously convicted of another capital felony or of a felony involving the use or the threat of violence to the person.
Evidence of Preston's felony conviction for throwing a deadly missile into an occupied vehicle was presented by the state and stipulated to by Preston. Appellant concedes that the conviction of this offense supports a finding of this factor but argues that he had requested and been denied notice of whether the state intended to introduce evidence on this issue and that such notice is required by section 775.084(3)(b), Florida Statutes (1981), the habitual offender statute, when a prior conviction is relied upon for the purpose of enhancing a penalty. We find this contention to be without merit. Previous efforts to analogize the provisions of section 775.084, the habitual offender statute, to capital cases have been rejected by this Court. Ruffin v. State, 397 So.2d 277, 282 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981). Furthermore, the death penalty statute itself puts a defendant charged with a capital felony on notice that the provisions of section 921.141(5) will be applied. Spinkellink v. Wainwright, 578 F.2d 582, 609-10 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).
The second aggravating factor applied was section 921.141(5)(d). That section reads:
(d) The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, arson, burglary, kidnapping, or aircraft piracy or the unlawful throwing, placing, or discharging of a destructive device or bomb.
The trial judge found that Preston had committed the murder immediately after he had committed the crime of robbery and while he was engaged in the commission of a kidnapping. Appellant does not contest the applicability of this aggravating factor and we find it to be supported by the evidence.
The trial judge found as his third applicable aggravating circumstance that the capital felony (murder) was especially heinous, atrocious, or cruel. § 921.141(5)(h). The court set out its finding as follows:
The murder of Earline Walker was accomplished after Preston committed robbery and kidnapped the victim, by the use of a knife, cutting the throat of the victim by severing the jugular veins, trachea and main arteries of the neck. In addition, the victim was stabbed numerous times in and about her body, and a crossmark was cut into her forehead, which acts apparently took place immediately after the victim's throat was slashed. The deliberate slashing of the throat of the victim from one side to the other with the force necessary to sever the jugular veins, trachea and main arteries is especially heinous, atrocious and cruel.
Preston claims that the manner of the killing is not the conscienceless or pitiless type of killing required by this Court in previous capital cases. He argues that the evidence established that the victim was not cognizant of the wounds inflicted after the initial slashing of her throat and, therefore, the death being instantaneous or near-instantaneous, it is not especially atrocious, heinous or cruel according to this Court's holding in Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977).
This Court has upheld the application of this factor where victims were killed instantaneously or nearly-instantaneously when, before the death occurred, the victims were subjected to agony over the prospect that death was soon to occur. The state argued in the trial court that this factor applied because of the mental anguish that the victim must have felt as the series of events surrounding the murder *946 unfolded. The jury found that Preston had robbed the store and then forced the victim to accompany him on a mile-and-a-half journey (to where her car was discovered). Her virtually naked body was found approximately five hundred feet from the car. This creates an obvious picture of a woman being forced to walk at knifepoint this considerable distance speculating as to her fate and undoubtedly cognizant of the likelihood of death at the hands of her abductor. Clearly, the victim must have felt terror and fear as these events unfolded. This finding is in accord with many of our previous decisions. Adams v. State, 412 So.2d 850 (Fla.), cert. denied, ___ U.S. ___, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982) (fear and emotional strain of abduction and attempted rape on eight-year-old girl prior to instantaneous death by strangulation was heinous, atrocious and cruel); Jones v. State, 411 So.2d 165 (Fla.), cert. denied, ___ U.S. ___, 103 S.Ct. 189, 74 L.Ed.2d 153 (1982) (point-blank range, handgun, execution style shooting of victim in back of head, while he lay prone on the floor of the liquor store pleading to be spared and after money had been taken from cash register, was properly called heinous, atrocious and cruel); Knight v. State, 338 So.2d 201 (Fla. 1976) (victims, husband and wife, were kidnapped and held for hours by the defendant before he shot them with a rifle killing them almost instantaneously). Cooper, upon which the appellant relies, is easily distinguishable from the factual situation here. In Cooper, the defendant walked up to the victim, a deputy sheriff, and shot him twice in the head killing him instantly. 336 So.2d at 1136. We emphasized the instantaneousness and painlessness of the death and stated that additional acts which make a killing "heinous" were absent. Id. at 1141.
The fourth aggravating circumstance found by the lower court was under section 921.141(5)(i) which reads:
(i) The capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.
The appellant argues that the finding of this factor in this case is absolute error in that it constitutes an ex post facto application of the law. The statute was enacted in July of 1979 and the murder of Earline Walker occurred on January 8, 1978. The state asserts that this argument has been previously rejected by this Court in Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982). We agree that Combs did determine this issue. We held in Combs that this aggravating circumstance could be retroactively applied since we found that it did not change the substance of the sentencing law to the detriment of capital offenders. See also Justus v. State, 438 So.2d 358 (Fla. 1983). We must reject appellant's argument.
The level of premeditation needed to convict in the guilt phase of a first-degree murder trial does not necessarily rise to the level of premeditation required in section 921.141(5)(i)[1]. This aggravating circumstance has been found when the facts show a particularly lengthy, methodic, or involved series of atrocious events or a substantial period of reflection and thought by the perpetrator. See, e.g., Jent v. State (eyewitness related a particularly lengthy series of events which included beating, transporting, raping, and setting victim on fire); Middleton v. State, 426 So.2d 548 (Fla. 1982) (defendant confessed he sat with a shotgun in his hands for an hour, looking at the victim as she slept and thinking about killing her); Bolender v. State, 422 So.2d 833 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 2111, 77 L.Ed.2d 315 (1983) (defendant held the victims at gunpoint for hours and ordered *947 them to strip and then beat and tortured them before they died).
The trial judge's specific finding on this point, as stated in the record, is as follows:
This murder, specifically the cutting of the throat of the victim from one side to the other, was committed in a cold and calculated manner with premeditation and without any pretence of moral or legal justification.
We do not feel that this finding or the record adequately supports the existence of the heightened form of premeditation required by this aggravating circumstance. The type of facts previously held to justify a finding of "cold, calculated and premeditated manner" within the meaning of subsection (i) simply do not exist here. We must reverse the trial court as to its finding on this aggravating circumstance.
We hold that the trial court properly found three aggravating circumstances to be applicable, and we now turn to the issue of mitigating circumstances of which the trial court found none to be applicable. Appellant argues that the trial judge should have found three statutory mitigating circumstances: 1) that the murder was committed while the appellant was under the influence of extreme mental or emotional disturbance; 2) that the capacity of the appellant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; and 3) the age of the defendant at the time of the crime.
We find that the evidence supports the trial court's rejection of these three mitigating circumstances and feel further discussion is not warranted. Having concluded that no mitigating factors are applicable and that three aggravating factors are, we must affirm the judgment of conviction and the sentence of death.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
NOTES
[1] This holding corrects an inadvertent error made by this Court in Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982), where we stated that the level of premeditation needed to convict in the penalty phase of a first-degree murder trial does not necessarily rise to the level of premeditation required in section 921.141(5)(i).