970 So.2d 789 (2007)
Robert Anthony PRESTON, Jr., Appellant,
v.
STATE of Florida, Appellee.
Robert Anthony Preston, Jr., Petitioner,
v.
James R. McDonough, Respondent.
Nos. SC05-781, SC06-351.
Supreme Court of Florida.
May 31, 2007.
Rehearing Denied December 10, 2007.
*791 Bill Jennings, Capital Collateral Regional CounselMiddle Region, Robert T. Strain and David R. Gemmer, Assistant CCRC, Tampa, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, and Barbara C. Davis, Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Robert Anthony Preston, Jr., appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons stated below, we affirm the trial court's order denying postconviction relief and deny Preston's petition for writ of habeas corpus.

I. FACTUAL AND PROCEDURAL BACKGROUND
Over twenty-five years ago, Robert Anthony Preston, Jr., was convicted of the robbery, kidnapping, and murder of Earline Walker, for which he was sentenced to death. On direct appeal in Preston v. State, 444 So.2d 939 (Fla.1984) (Preston I), this Court found that the following facts were established at Preston's trial:

*792 Early in the afternoon on January 9, 1978, the nude and mutilated body of Earline Walker was discovered in an open field in Seminole County by a detective of the Altamonte Springs Police Department. The victim's body had sustained multiple stab wounds and lacerations resulting in near decapitation.
Earline Walker was employed as a night clerk at a convenience store and had been discovered missing from the store at approximately 3:30 A.M. when an officer of the Altamonte Springs Police Department made his regular patrol. The officer also found that the sum of $574.41 was missing from the store.
The appellant, Preston, was arrested on the following day on an unrelated charge. While he was in the custody of the Seminole County Sheriff, a deputy recovered a light brown pubic hair from Preston's belt buckle. Police also found a jacket of Preston's and several detached food stamp coupons in Preston's bedroom at his mother's house the day after his arrest during a search conducted after the police had received Preston's mother's consent. Comparison of the serial numbers on the food stamps recovered from the wastebasket in Preston's bedroom with those on two coupon booklets turned over to the police by an employee of the convenience store showed four matching coupons. In addition, fracture pattern analysis confirmed the coupons had been used at the convenience store to make purchases several days before the murder. No latent fingerprints were obtained from these sources.
Analysis revealed that the pubic hair recovered from Preston's belt and another discovered on his jacket could have originated from the victim. Blood samples taken from the victim and Preston were compared with two stains found on Preston's jacket. The stains proved to be of the same blood type and same enzyme group as those of the victim. In processing the victim's automobile, which had been found abandoned on the day of the murder, several usable latent fingerprints were obtained. One was identified as being Preston's.
Id. at 941-42.
Two death warrants were signed in this case, but each expired while Preston sought postconviction review. Ultimately, Preston was resentenced twice. On direct appeal following his second resentencing, this Court recited the procedural history in this case as follows:
Preston was convicted of first-degree murder, kidnapping, and robbery. He was sentenced to death. At the original sentencing, the trial court found four aggravating circumstances: (1) Preston was previously convicted of a violent felony (throwing a deadly missile into an occupied vehicle); (2) the murder was especially heinous, atrocious, or cruel; (3) the murder was committed during the course of a felony; and (4) the murder was cold, calculated, and premeditated. The trial court found no mitigating circumstances.
This Court affirmed the conviction on direct appeal. The Court struck one of the aggravating factors found by the trial judge, [the cold, calculated, and premeditated factor,] but nevertheless affirmed the death sentence. Preston v. State, 444 So.2d 939 (Fla.1984) [(Preston I)].[[1]] We affirmed the denial of *793 relief on Preston's first motion for postconviction relief, Preston v. State, 528 So.2d 896 (Fla.1988), cert. denied, 489 U.S. 1072, 109 S.Ct. 1356, 103 L.Ed.2d 824 (1989) [(Preston II)[2]], and denied his petitions for writ of error coram nobis and for writ of habeas corpus. Preston v. State, 531 So.2d 154 (Fla. 1988) [(Preston III)].[[3]]
On appeal from the denial of relief on Preston's second postconviction motion, this Court vacated the death sentence and ordered resentencing. Preston's prior felony of throwing a deadly missile into an occupied vehicle had been set aside due to ineffective assistance of trial counsel, leaving only two of the four aggravating circumstances found by the trial court. Because mitigating evidence was introduced at the penalty phase and because the jury recommended death by only a one-vote margin, the Court was unable to say that the elimination of this aggravating factor constituted harmless error. Preston v. State, 564 So.2d 120 *794 (Fla.1990) [(Preston IV)].[[4]]
The circuit court held a new penalty phase hearing after which the jury recommended the death sentence by a vote of nine to three. However, because it was discovered that one of the jurors had not accurately responded to voir dire interrogation, the trial court granted a new penalty phase trial. At the second resentencing hearing, a new jury unanimously recommended the death penalty. The court imposed the death penalty, finding four aggravating circumstances: (1) the murder was committed while Preston was engaged in a kidnapping; (2) the murder was especially heinous, atrocious, or cruel; (3) the murder was committed for the purpose of avoiding arrest; and (4) the murder was committed for pecuniary gain. The court found one statutory mitigating factor (Preston's age) and five nonstatutory mitigating factors but afforded the mitigation only minimal weight.
Preston v. State, 607 So.2d 404, 406-07 (Fla.1992) (Preston V) (footnote omitted).[5]
In Preston V, this Court affirmed Preston's death sentence. Preston then filed the current rule 3.850 motion for postconviction relief on May 24, 1994. He amended and supplemented this motion several times, ultimately raising forty-two claims.[6] *795 The trial court held a Huff[7] hearing on September 1, 2000, and granted an evidentiary hearing on claims (1), (4), (6), (17), (18), (23), (27), (28), (29), (30), (31), (32), (33), (35), (36), and (39). The trial court specifically denied claims (40) and (41) without prejudice and generally denied an evidentiary hearing on the remainder of the claims.[8]
An evidentiary hearing was held on January 7 and 27, 2004. Preston presented the testimony of Arthur Kutsche, his 1981 *796 trial counsel, and James Russo and Marlene M. Alva, his 1991 resentencing counsel. The evidentiary hearing was primarily related to claims (6) and (39). On March 31, 2005, the trial court issued its order denying each of Preston's claims. Preston now appeals, raising eight issues. He also petitions for a writ of habeas corpus.

II. 3.850 MOTION FOR POSTCONVICTION RELIEF
Of the forty-two claims Preston raised below in his motion for postconviction relief, he appeals or partially appeals the trial court's denial of eight claims.[9] Initially, we note that two of these claims, Preston's claim that Florida's capital sentencing scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and his claim that guilt phase counsel was ineffective, are procedurally barred.[10] In addition, in his claim concerning the state attorney's failure to produce public records, Preston fails to assert any error or request relief. Thus, this claim is without merit and need not be discussed further.[11] We also find that Preston's claim that his right to equal protection was violated because his counsel could not interview his jurors in order to discover error is both procedurally barred and without merit.[12] Finally, although we disagree with the trial court's conclusion that Preston's claim that lethal injection is cruel and unusual punishment is procedurally barred,[13] we affirm the trial court's summary denial of this claim based on Sims v. State, 754 So.2d 657 (Fla.2000).[14]
*797 Thus, we address Preston's remaining three claims: (1) the trial court erred in finding sufficient evidence to support Preston's conviction for first-degree murder based on newly discovered DNA evidence that the pubic hair found on Preston is not the victim's; (2) the trial court erred in denying the claim that resentencing counsel was ineffective for failing to present Arlene Cobb as a corroborating witness of Preston's PCP use on the night of the murder; and (3) the trial court erred in denying Preston's claim of cumulative error throughout all of the proceedings in his case. We affirm the trial court's denial of each of these claims.

(1) Newly Discovered DNA Evidence
Preston first claims that the trial court erred in finding that there was sufficient evidence to support his conviction in light of the newly discovered DNA evidence showing that the pubic hair recovered from his belt buckle did not match the victim.[15] Preston argues that the hair was such a significant piece of evidence to the State's circumstantial evidence case that without it he likely would have been acquitted at trial. Thus, Preston argues that he is entitled to a new trial. Further, Preston argues that the trial court's findings under the cumulative analysis requirement of Jones v. State, 709 So.2d 512, 521 (Fla.1998), are inadequate.[16]
The trial court's order consists of the following findings:
In his thirty-ninth claim, the Defendant alleges . . . that there is newly discovered DNA. . . . Although the DNA testing available today shows that the hair from the belt buckle was not the victim's, . . . because the belt buckle hair was not the only item in this case that tied the Defendant to the victim, it should be dismissed. The blood and the fingerprints are sufficient evidence. Post-conviction relief should be denied as to this claim.
While we agree with Preston that the trial court failed to conduct an adequate cumulative analysis, or at least failed to adequately commit its findings to writing, as we explain, we do not find that this newly discovered evidence would probably have resulted in an acquittal for Preston.

Standard of Review and Applicable Law
The standard of review governing claims of newly discovered evidence was first enunciated in Jones v. State, 709 So.2d at 521. To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements. First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. See Jones, 709 So.2d at 521. Newly discovered evidence satisfies the second prong of the Jones test if it "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability." Jones, 709 So.2d at 526 (quoting Jones v. State, 678 So.2d 309, 315 (Fla.1996)). If the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence would probably *798 yield a less severe sentence. See Jones v. State, 591 So.2d 911, 915 (Fla.1991).
In determining whether the evidence compels a new trial, the trial court must "consider all newly discovered evidence which would be admissible" and must "evaluate the weight of both the newly discovered evidence and the evidence which was introduced at the trial." Id. at 916. This determination includes
whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence. The trial court should also determine whether the evidence is cumulative to other evidence in the case. The trial court should further consider the materiality and relevance of the evidence and any inconsistencies in the newly discovered evidence.
Jones, 709 So.2d at 521 (citations omitted).
When the trial court rules on a newly discovered evidence claim after an evidentiary hearing, we review the trial court's findings on questions of fact, the credibility of witnesses, and the weight of the evidence for competent, substantial evidence. Melendez v. State, 718 So.2d 746, 747-48 (Fla.1998); Blanco v. State, 702 So.2d 1250, 1251 (Fla.1997). We review the trial court's application of the law to the facts de novo. Hendrix v. State, 908 So.2d 412, 423 (Fla.2005) (reviewing de novo the trial court's application of the law to the facts in ruling on a postconviction claim that the government withheld material evidence); Gore v. State, 846 So.2d 461, 468 (Fla.2003) (reviewing de novo the application of the law to the facts on a claim of ineffective assistance of trial counsel).

Analysis
At the outset, we agree with Preston that the trial court's findings are inadequate, thus making our review more difficult. Further, there is no indication whether the trial court employed the cumulative analysis required under Jones. In Lightbourne v. State, 742 So.2d 238, 247 (Fla.1999), where the trial court failed to fully consider and set out the effect of newly discovered evidence in the form of recanted testimony, we stated that "[t]he trial court cannot consider each piece of evidence in a vacuum, but must look at the total picture of all the evidence when making its decision." Accordingly, we admonished the trial court that the "cumulative analysis [under Jones] must be conducted so that the trial court has a `total picture' of the case." Id. Unlike the trial court in this case, however, in Lightbourne, the trial court did not have the benefit of this Court's Jones opinions. Nevertheless, we undertook to apply the Jones analysis in Lightbourne, and we now do the same here.[17]
There is no dispute that the DNA evidence concerning the pubic hair, showing that it did not belong to the victim, is newly discovered evidence. Thus, the only question which we must answer is whether this newly discovered DNA evidence is of such a nature that it would probably produce an acquittal for Preston on retrial. Having reviewed this newly discovered DNA evidence in light of the other evidence presented at trial and throughout the proceedings in this case, including the affidavits presented with Preston's petition for writ of error coram nobis, we conclude that the nature of this DNA evidence is *799 not such that it would probably produce an acquittal on retrial.
Our review of the guilt phase trial record, as set out in Preston III where we considered Preston's prior claim of newly discovered evidence in his petition for writ of error coram nobis, supports the trial court's conclusion that postconviction relief should be denied. In Preston III, this Court provided a thorough recitation of the evidence presented at trial as follows:
Earline Walker, who was working as a night clerk at the Li'l Champ convenience store in Forest City, was noticed missing at approximately 3:30 a.m. on the morning of January 9, 1978. All bills had been removed from the cash register and the safe, and it was subsequently determined that $574.41 had been taken. Walker's automobile was found later that day parked on the wrong side of the road approximately one and a half miles from the Li'l Champ store. Thereafter, at about 1:45 p.m. of the same day, Walker's nude and mutilated body was discovered in an open field adjacent to her abandoned automobile.
Preston lived with his brothers, Scott and Todd, at his mother's home which was located about one-quarter of a mile from the field in which Walker's body was found. Scott Preston testified that he spent the evening of January 8, 1978, at the house with his brothers and his girlfriend, Donna Maxwell. At about 11:30 p.m., he retired to the bedroom with Donna. About an hour later, Robert knocked on the door, asking Scott to go with him to the Parliament House "to get some money." When Scott declined, Robert asked one of them to help him inject some PCP. After Scott and Donna refused to do so, they heard the door slam as Robert left the house. At about 4:30 a.m., Robert returned and asked them to come to the living room where he was attempting to count some money. Because he "wasn't acting normal," they counted the money for him, which came to $325. Robert told them that he and a friend, Crazy Kenny, had gone to a gay bar called the Parliament House where they had hit two people on the head and taken their money. Scott and Donna went back to bed. Donna gave similar testimony concerning Robert's actions. She also said that shortly before 9:00 a.m., Robert returned and told her that he had heard that a body of a woman who worked in a store near their house had been discovered in a field.
The head security guard at the Parliament House testified that he observed no disturbance nor was any disturbance reported to him at that establishment during his shift which began in the early evening on January 8 and ended at 5:00 a.m. on January 9. There was no police report of any incident at the Parliament House on January 9, 1978.
A woman returning home from her late night job at about 2:20 a.m. saw Preston wearing a plaid CPO jacket at a location near the vacant lot where Walker's body was found.
Preston was arrested the day following the murder on an unrelated charge. As part of the booking process, his personal effects, including his belt, were removed, and his fingerprints were taken. A pubic hair was discovered entangled in Robert's belt buckle. A microscopic analysis of the hair together with another one discovered on his jacket indicated that they could have originated from Walker's body.
Blood samples were taken from the victim and from Preston and compared with two blood stains found on Preston's CPO jacket. The blood samples were compared as to eight separate factors, *800 including type, Rh factor, and enzyme content. The sample from the coat and the victim matched in all eight tests, while Preston's blood did not match in three. An expert opined that the blood on the coat could not have been Preston's but could have been the victim's. He also testified that only one percent of the population would have all eight factors in their blood.
Several detached food stamps were also found in Preston's bedroom pursuant to a consent search authorized by his mother. As a result of a fracture pattern analysis, an expert witness testified that these coupons had been torn from a booklet used by Virginia Vaughn to make purchases at the Li'l Champ food store several days before the murder. Vaughn testified that at the time of her purchase the coupons had been placed either in the cash register or the safe.
Five usable latent fingerprints and palm impressions were obtained from Walker's automobile and were identified as having been made by Preston. One of these was from a cellophane wrapper of a Marlboro cigarette pack found on the front console. The other prints were located on the doorpost and the roof of the car.
Preston took the stand in his own behalf. He agreed that he was at his mother's house in the company of his brothers and Donna Maxwell the night of January 8. However, he said he had injected PCP and had no recollection of what occurred during the middle portion of the night. He did recall trying to count some money and had some recollection of going to the Parliament House in a car driven by Crazy Kenny. Preston denied having touched Walker's abandoned automobile. He also said that he had not been in the vicinity of the Li'l Champ store for approximately six months before the murder. He testified that the food stamps discovered in his room were found by him on a path behind the Li'l Champ store on the morning of the murder when he went there to purchase cigarettes. He admitted talking to Donna Maxwell regarding the discovery of the store clerk's body but said that the conversation did not occur until about 3:30 to 4:30 p.m.
Preston III, 531 So.2d at 155-57 (denying Preston's petition for writ of error coram nobis). Further, we stated that "[w]hile the case against [Preston] was based on circumstantial evidence, it was nevertheless a strong case. The evidence concerning the fingerprints, the blood, and the food stamps was most persuasive." Id. at 158 (emphasis added).
Contrary to Preston's argument, the pubic hair was not the only link between Preston and the victim. The fingerprints in and on Walker's car, the blood, and the food stamps all link Preston to the victim. Moreover, as we noted in Preston III, the fingerprints, blood, and food stamps are the most persuasive pieces of circumstantial evidence.
Furthermore, even absent the pubic hair and considering the affidavits presented with Preston's petition for writ of error coram nobis, as noted in Preston III, the circumstantial evidence against Preston is very strong. The testimony of Preston's brother, Scott, and his then girlfriend, Donna Maxwell, contradicts Preston's version of the events. Although the four affidavits Preston presented with his writ of error coram nobis would support his hypothesis that Scott killed Walker, as we stated in Preston III,
At best, if [this] newly discovered evidence had been known at trial, it could have been used to impeach Scott Preston and perhaps introduced under section 90.804(2)(c), Florida Statutes (1987). *801 It would have put in question Scott Preston's credibility, but it would not have nullified his testimony. It would not have affected the testimony of Donna Maxwell, who fully corroborated Scott Preston's testimony. The force of the remaining evidence would have been undiminished.
531 So.2d at 158.[18] In particular, Donna Maxwell testified that around 9 a.m., Preston told her Walker's body had been found in a nearby field; whereas Walker's body was not actually discovered until later that day, around 1:45 p.m. This testimony contradicted Preston's testimony that he told Donna about Walker's body sometime between 3:30 and 4:30 p.m. Moreover, no one at the Parliament House or the police department could corroborate Preston's version of the events; the testimony of Arlene Cobb, the woman returning home from her late night job, contradicts Preston's testimony that he had not been in the vicinity of the Li'l Champ store in six months; and the fingerprints in and on Walker's car contradict Preston's testimony that he never touched the car.
Therefore, in light of the overwhelming evidence of Preston's guilt presented at trial, as well as considering the affidavits presented with Preston's petition for writ of error coram nobis, we conclude that the newly discovered DNA evidence regarding the pubic hair would probably not produce an acquittal on retrial. See Lightbourne, 742 So.2d at 248 (finding that in light of the overwhelming evidence of guilt in that case the recanted testimony would not "probably produce an acquittal on retrial") (quoting Jones, 709 So.2d at 521); see also Hildwin v. State, 951 So.2d 784, 789 (Fla. 2006) (holding that although newly discovered DNA evidence refuting trial serology evidence that Hildwin's bodily fluids were on the victim's panties was significant, the evidence was not "of such nature that it would probably produce an acquittal on retrial" in light of the other evidence presented at trial and the fact that Hildwin's case was never prosecuted as a rape case). Accordingly, we affirm the trial court's denial of this claim.

(2) Ineffective Assistance of Resentencing Counsel
Preston claims that resentencing counsel was ineffective for failing to present the live testimony of Arlene Cobb to the resentencing jury in order to corroborate the other evidence concerning Preston's PCP use at the time of Walker's murder. Preston argues that resentencing counsel's reasons for not calling Ms. Cobb to testify demonstrate that their performance fell below reasonable professional norms and cannot be deemed strategic.[19] *802 Preston cursorily mentions at the end of his argument that he was prejudiced by the resentencing court's refusal to find the two mental health statutory mitigators based on its finding that Preston's PCP use was not corroborated.
Arlene Cobb testified at the 1981 trial and in her pretrial deposition that she was coming home from work around 2:20 a.m. when she saw Preston. According to Ms. Cobb, Preston stood directly in front of her car with a bewildered look on his face for nearly thirty seconds. Ms. Cobb identified Preston a few days later after seeing his face on television the following evening.
At the evidentiary hearing below, Preston's resentencing counsel, James Russo and Marlene Alva, testified that they had determined that they would try to establish the two statutory mental health mitigators by introducing evidence that Preston was under the influence of PCP at the time of the murder.[20] Ms. Alva testified that she attempted to contact Ms. Cobb to testify at the 1991 resentencing. However, Ms. Cobb was both reluctant to testify and expressed a lack of independent recollection even after Ms. Alva tried to refresh her memory.
Resentencing counsel testified that they realized that Ms. Cobb's 1981 pretrial deposition testimony was actually better than her 1981 trial testimony and could be introduced as corroborating evidence under a hearsay exception through the testimony of the mental health experts. They put on the testimony of four mental health experts concerning the effect of PCP on a person's behavior and brought out Ms. Cobb's deposition testimony as part of these experts' reviews. They also called Donna Maxwell (Houghtaling), whose testimony throughout the proceedings in this case indicated that Preston asked her to help him ingest PCP a few hours prior to the time of the murder and that Preston was acting strangely around 4:30 a.m., just after the murder occurred. Preston also testified at his resentencing regarding his drug use on the night in question and maintained that he did not recall what happened at the time of the murder. Resentencing counsel also presented evidence of the syringes found in Preston's wastebasket.

Standard of Review and Applicable Law
We review claims of ineffective assistance of counsel under the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We defer to the trial court's findings of fact regarding the credibility of witnesses and the weight assigned to the evidence but review the deficiency and prejudice prongs de novo. Windom v. State, 886 So.2d 915, 921 (Fla.2004) (citing Stephens v. State, 748 So.2d 1028, 1034 (Fla.1999)).
As we recognized in Wike v. State, 813 So.2d 12, 17 (Fla.2002):
To establish a claim that defense counsel was ineffective, a defendant must prove two elements:

*803 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052); see also Rutherford v. State, 727 So.2d 216, 219 (Fla.1998). In order to establish deficient performance under Strickland, "the defendant must show that counsel's representation fell below an objective standard of reasonableness" based on "prevailing professional norms." 466 U.S. at 688, 104 S.Ct. 2052; see Wike, 813 So.2d at 17. In order to establish the prejudice prong under Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. 2052; see Wike, 813 So.2d at 17. Failure to establish either prong results in a denial of the claim. Ferrell v. State, 918 So.2d 163, 170 (Fla.2005) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. 2052.

Analysis
Initially, we note that Preston has failed to establish the prejudice prong by failing to advance any argument concerning prejudice. Therefore, he is not entitled to relief under Strickland, and we need not reach the deficiency prong. See Whitfield v. State, 923 So.2d 375, 384 (Fla.2005) ("[B]ecause the Strickland standard requires establishment of both [deficient performance and prejudice] prongs, when a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong.") (quoting Stewart v. State, 801 So.2d 59, 65 (Fla.2001)); see also Sweet v. State, 810 So.2d 854, 863-64 (Fla. 2002) (declining to reach deficiency prong based on finding that there was no prejudice).
However, we note that the trial court correctly concluded that Preston has not met his burden of overcoming the presumption that resentencing counsel's decision not to call Arlene Cobb to testify could be considered sound trial strategy. The postconviction court made the following findings and conclusions in denying Preston's ineffectiveness claim:
The Defendant's sixth claim is that he was denied effective assistance of counsel when counsel failed to present a corroborating witness, Arlene Cobb, at the re-sentencing hearing. He claims she would have testified about his bizarre behavior and his ingestion of PCP. "Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." See Occhicone v. State, 768 So.2d 1037 (Fla.2000). As the record *804 reflects, the defense attorneys, James Russo and Marlene Alva, made a reasonable strategic decision not to call Cobb at the April 1991 proceeding. They determined Cobb's testimony could come in through the medical experts and be stronger. Despite the fact that Cobb was not called as a witness at the resentencing phase, the jury was not deprived of evidence that corroborated the Defendant's testimony that he ingested PCP on the night of the murder as medical experts, Dr. Krop and Dr. Levin, both cited Cobb as a source of information for corroboration. Furthermore, Alva talked to Cobb on the phone and the latter expressed that she did not have any recollection of the events. Thus, counsel's performance was not deficient as it did not fall below the objective standard of reasonableness based on the foregoing facts. Post-conviction relief should be denied as to this claim.
(Citations to exhibits omitted.)
The trial court's findings are supported by competent, substantial evidence. Based upon this record, the postconviction court properly concluded that resentencing counsel made a strategic decision under the circumstances after considering alternative courses of action. See Occhicone, 768 So.2d at 1048. Resentencing counsel was effectively forced to consider alternative courses of action given Ms. Cobb's reluctance and lack of recollection. After considering alternative courses of action, resentencing counsel determined that Ms. Cobb's 1981 deposition could still be brought in through the four mental health experts based on a hearsay exception. This was a legally competent decision falling well within the norms of professional conduct.
Moreover, as the State points out, Ms. Cobb was not an expert concerning the use of PCP and could do no more than relay what she saw. Expert testimony was, thus, necessary to establish that Preston's actions, as witnessed by Ms. Cobb, were consistent with PCP use. Therefore, there is no reason to believe that had Ms. Cobb testified live at the 1991 resentencing, the trial court would have considered Preston's use of PCP at the time of the murder to have been sufficiently corroborated and found the existence of the two statutory mental health mitigators. Thus, resentencing counsel's decision not to call Ms. Cobb to testify live cannot be said "to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined." Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). Accordingly, we affirm the trial court's denial of this claim.

(3) Cumulative Error
Preston claims that the cumulative errors involved throughout the proceedings in his case, considered as a whole, deprived him of a fundamentally fair trial and cannot be harmless. This claim is without merit. This Court has already denied each allegation of error on direct appeal following Preston's resentencing in 1991, and the trial court properly denied each of Preston's postconviction claims below. Therefore, Preston's cumulative error claim fails. See Dufour v. State, 905 So.2d 42, 75 (Fla.2005) ("[N]either the individual claims presented in Dufour's habeas petition nor those advanced in his motion for postconviction relief constitute a basis for relief. Therefore, cumulatively, these claims fail as well.") (citing Porter v. Crosby, 840 So.2d 981 (Fla.2003)).

III. PETITION FOR WRIT OF HABEAS CORPUS
Preston raises four issues in his petition for writ of habeas corpus: (1) appellate counsel was ineffective for failing to raise the claim that Florida's capital sentencing *805 scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556; (2) appellate counsel was ineffective for failing to raise the claim that Preston's due process and equal protection rights were violated because his counsel was prohibited from interviewing jurors;[21] (3) appellate counsel was ineffective for failing to raise the claim that the jury was unconstitutionally instructed that its role was merely "advisory" in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985);[22] and (4) Preston may not be competent at the time of his execution. We hold that none of these claims warrants relief.
First, Preston's three ineffective assistance of counsel claims are procedurally barred. See Rodriguez v. State, 919 So.2d 1252, 1281 n. 16 (Fla.2005) ("[H]abeas corpus petitions are not to be used for additional appeals on questions which could have been or were raised . . . in a rule 3.850 motion.") (citing Hardwick v. Dugger, 648 So.2d 100, 105 (Fla.1994)). Each of the underlying claims was raised in Preston's rule 3.850 motion.[23] Preston seeks to circumvent this procedural bar through conclusory allegations that appellate counsel was ineffective. However, Preston "cannot overcome a procedural default by recasting the argument in the guise of an ineffective assistance claim." Id. (citing Freeman v. State, 761 So.2d 1055, 1067 (Fla.2000)); see also Thompson v. State, 796 So.2d 511, 515 n. 5 (Fla.2001) ("[Conclusory allegations of ineffective assistance of counsel] are legally and facially insufficient to warrant relief under Strickland v. Washington, 466 U.S. 668[, 104 S.Ct. 2052, 80 L.Ed.2d 674] (1984))." Therefore, Preston is not entitled to relief on any of these claims.
Finally, Preston claims that he may not be competent at the time of his execution. However, as Preston concedes, this claim is premature. Therefore, we deny it without prejudice. See Reaves v. State, 826 So.2d 932, 936 n. 5 (Fla.2002) (denying claim that defendant may be insane at time of execution as premature without prejudice).

IV. CONCLUSION
For the reasons set forth above, we affirm the trial court's denial of Preston's motion for postconviction relief, and we deny his petition for a writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Preston raised four claims on direct appeal: (1) at trial, the court improperly admitted the evidence seized from Preston's bedroom (Preston's jacket and the food stamp coupons) because Preston's mother could not give valid consent to search his room; (2) the trial court erred in failing to grant Preston's judgment of acquittal because the record did not contain sufficient evidence of premeditation; (3) the trial court erred in failing to instruct the jury on the defense of insanity; and (4) the trial court failed to properly apply the aggravating and mitigating factors of section 921.141(5) and (6), Florida Statutes (1981), in arriving at its decision to impose the death penalty.
[2] In Preston's first motion for postconviction relief, this Court declined to address a "myriad of issues" without further discussion but advised that "[t]o the extent, if any, that the content of such motions reflects newly discovered evidence tending to exonerate appellant, this may be presented through the filing of a motion for writ of error coram nobis." Preston II, 528 So.2d at 898. This Court did address the following claims: (1) the State violated the dictates of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to notify Preston's counsel that the police had discovered keys bearing the name "Marcus A. Morales" in the victim's automobile; (2) the State violated Brady by failing to disclose to the defense an unfavorable personnel evaluation of the hair analysis expert who testified at Preston's trial; (3) Preston's conviction and sentence should be reversed due to the state attorney's conflict of interest; (4) the trial court failed to properly consider all of the nonstatutory mitigating evidence under Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); (5) the trial court's instructions to the jurors misled them with respect to the significance to be attached to their sentencing verdict in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (6) there was reversible error concerning Preston's court-ordered psychiatric examination under Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); and (7) Preston was denied the effective assistance of trial counsel.
[3] In Preston's petition for writ of error coram nobis, he proffered the affidavits of four individuals, each of whom said that Preston's brother, Scott, had taken credit for Walker's murder. In addition, in his petition for writ of habeas corpus, Preston raised the following claims: (1) appellate counsel was ineffective for not arguing that the State had violated the dictates of Brady by failing to notify Preston's counsel that the police had discovered keys bearing the name "Marcus A. Morales" in the victim's automobile; (2) the jury was materially misled by the erroneous jury instruction that a verdict of life imprisonment must be rendered by a majority of the jury; (3) appellate counsel was ineffective for failing to argue the trial court's erroneous use of misinformation in considering the aggravating and mitigating circumstances; (4) Preston's right to a fair trial was violated by the trial judge's refusal to instruct the jury on insanity; (5) appellate counsel was ineffective for failing to argue that the court erred in instructing the jury that an aggravating circumstance applicable to Preston's case was that Preston had previously been convicted of the violent crime of throwing a deadly missile into an occupied building; (6) Preston was deprived of his rights to an individualized sentencing because of impermissible victim impact information under the rationale of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987); and (7) the trial court's instructions unfairly shifted the burden of proof to the defendant with respect to aggravating and mitigating circumstances.
[4] In Preston's second postconviction motion, Preston alleged that he was entitled to relief because his prior violent felony conviction was vacated. Preston also raised several procedurally barred claims, including the newly discovered evidence claim raised in his petition for writ of error coram nobis.
[5] Preston raised the following claims in his direct appeal following his 1991 resentencing: (1) the resentencing court erred in finding aggravating circumstances not found by the trial judge in the original sentencing proceeding under principles of double jeopardy, res judicata, law of the case, and fundamental fairness; (2) the evidence did not support the finding that the murder was committed for the purpose of avoiding arrest (witness elimination); (3) the aggravating factors of commission for pecuniary gain and commission during the course of a robbery and kidnapping should have been considered as a single factor; (4) the evidence did not support the finding that the murder was especially heinous, atrocious, or cruel; (5) Preston was denied due process by the admission of irrelevant evidence, i.e., the medical examiner's testimony regarding the autopsy on the victim; (6) the trial court erred in admitting photographs of the victim's body at resentencing; (7) the trial court erred in refusing to permit testimonial evidence relevant to statutory mitigating circumstances; (8) the trial court erred in refusing to find the existence of two statutory mental health mitigating factors; (9) the death penalty was not proportionally warranted; and (10) the trial court erred in refusing to give two special jury instructions requested by trial counsel.
[6] As summarized by the trial court in its order, Preston raised the following claims: (1) Preston was denied effective representation by counsel for lack of access to public records; (2) the trial outcome was materially unreliable; (3) section 921.141(5) is unconstitutional because it is facially vague and overbroad; (4) the State withheld material evidence which was exculpatory in nature; (5) Preston's counsel was ineffective for failing to adequately present evidence to rebut aggravating factors; (6) Preston's counsel was ineffective for failing to present a corroborating witness, Arlene Cobb, at the resentencing hearing; (7) Preston was incompetent both at his 1981 trial and at the time of his 1991 resentencing; (8) Florida's rule prohibiting defense counsel from interviewing jurors violates equal protection and due process; (9) the sentencing court erroneously instructed the jury on the standard to judge expert testimony and thus made decisions of law; (10) the introduction of nonstatutory aggravating factors rendered Preston's death sentence fundamentally unfair and unreliable; (11) Preston was denied a fair sentencing hearing because the sentencing judge refused to find the existence of both statutory and nonstatutory mitigating circumstances; (12) the prosecutor's misconduct rendered Preston's conviction and sentence unfair and unreliable; (13) Florida's capital sentencing statute is unconstitutional; (14) Preston's sentence rests upon an unconstitutional automatic aggravating circumstance because the murder was committed during the course of a felony (kidnapping); (15) the sentencing court prohibited Preston from introducing relevant mitigating evidence; (16) Preston's rights were violated when the prosecutor suggested during voir dire that the law required that the jury recommend a death sentence; (17) Preston's mental health experts did not render adequate assistance; (18) Preston did not make a knowing and intelligent waiver of any rights; (19) the sentencing jury was misled by comments, questions, and instructions that unconstitutionally and inaccurately diluted the jury's sense of responsibility toward sentencing; (20) the aggravating circumstances as argued by the State were vague and overbroad, and counsel was ineffective for failing to object to the State's arguments; (21) newly discovered evidence showing that Preston's brother killed Ms. Walker establishes that Preston's conviction and sentence are constitutionally unreliable; (22) collateral counsel was rendered ineffective due to the State's interference with and withholding of materials for discovery and the presentation of evidence; (23) Preston was denied due process and a fair trial before an impartial jury due to extensive pretrial publicity; (24) the jury was improperly instructed that they had to find a reasonable doubt that Preston's actions were heinous, atrocious, and cruel; (25) the death sentence violates the Eighth and Fourteenth Amendments due to the improper application of the aggravating factor of pecuniary gain; (26) the avoiding arrest aggravator was improperly applied and the jury received inadequate instructions; (27) the jury's death recommendation was tainted by consideration of invalid aggravating circumstances; (28) Preston was deprived of due process and equal protection when he was improperly shackled during the penalty phase, and resentencing counsel was ineffective for failing to object; (29) Preston was deprived of due process when the bailiff improperly discussed the case with the jury, and resentencing counsel was ineffective for failing to object; (30) the jury was given a vague instruction on credit for time already served, which affected their deliberations, and appellate counsel was ineffective for failing to raise this issue on direct appeal; (31) resentencing counsel was ineffective for failing to object to the State's use of peremptory strikes on the basis of race and demand a Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), hearing; (32) resentencing counsel was ineffective for failing to object to the State's peremptory challenges to excuse males from the jury; (33) resentencing counsel was ineffective for failing to adequately voir dire prospective jurors to discover whether they had knowledge of the case; (34) resentencing counsel was ineffective for failing to rehabilitate two prospective jurors regarding their ability to follow the law in imposing the death penalty; (35) Preston was deprived of a fair penalty phase and resentencing due to systematic discrimination in the selection of a jury venire; (36) Preston was deprived of a fair trial due to procedural and substantive issues; (37) execution by lethal injection is unconstitutional because it is cruel and unusual punishment; (38) execution by electrocution is unconstitutional because it is cruel and unusual punishment; (39) resentencing counsel was ineffective for failing to challenge the credentials of the State's expert witness, Diane Bass, the crime lab hair analyst, and there is newly discovered DNA evidence that the hair on Preston's jacket did not belong to the victim; (40) guilt phase counsel was ineffective for failing to challenge the qualifications of the State's serology expert; (41) guilt phase counsel was ineffective for failing to challenge the qualifications of the medical examiner, Dr. Garay, and his testimony; and (42) Preston's judgment and sentence of death must be vacated in light of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
[7] Huff v. State, 622 So.2d 982 (Fla.1993).
[8] In his supplemental motion, Preston requested leave to amend claim (41) and added claim (42), his Ring claim.
[9] These eight claims were originally denominated claims (1), (6), (8), (36), (37), (39), (41), and (42). See supra note 6.
[10] Preston's Ring claim is procedurally barred because Ring does not apply retroactively to cases already final on review. See Johnson v. State, 904 So.2d 400, 412 (Fla. 2005) (holding that Ring does not apply retroactively to cases already final on review under Florida's retroactivity analysis); see also Schriro v. Summerlin, 542 U.S. 348, 358, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (holding that Ring does not apply retroactively to cases already final on review under federal retroactivity analysis). Preston's claim of ineffective assistance of guilt phase counsel is procedurally barred because it should have been raised in his first postconviction motion following his 1981 trial.
[11] The state attorney apparently lost some of its files from Preston's 1981 trial, but the parties agree that the files are actually lost and that the State has made a good faith effort to locate them. As the trial court noted below, the State is under an ongoing duty to disclose any files that resurface.
[12] Preston did not preserve this issue because he filed no motion at the trial level seeking leave to interview jurors, nor did he make a legally sufficient request to interview the jurors for cause under rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar. Moreover, Preston's claim is without merit under Arbelaez v. State, 775 So.2d 909, 920 (Fla.2000) (finding that Arbelaez would not be entitled to relief based on his "inability to conduct `fishing expedition' interviews with the jurors after a guilty verdict is returned").
[13] Because electrocution was the only means of execution prior to the 2000 amendment to section 922.105, Florida Statutes, Preston could not have challenged lethal injection on direct appeal. And, because the 2000 amendment is retroactive, we disagree with the trial court's holding that Preston's claim is procedurally barred. See Bryan v. State, 753 So.2d 1244, 1254 (Fla.2000) (stating that the legislature intended section 922.105 to be applied retroactively); see also Sims v. State, 754 So.2d 657, 664-65 (Fla.2000) (holding that retroactive application of section 922.105 "does not violate the Ex Post Facto clauses of the state and federal constitutions").
[14] Preston does not raise any argument that was not already addressed and disposed of contrary to his position in Sims. Our disposition of this claim is without prejudice to any claim raised in Lightbourne v. McCollum, No. SC06-2391 (Fla. petition filed Dec. 14, 2006).
[15] The State stipulated to the fact that DNA testing on the pubic hair conclusively shows that it does not belong to the victim, Earline Walker.
[16] Preston also alleged below that guilt phase counsel was ineffective at trial for failing to voir dire the State's expert hair analyst, Diane Bass. However, Preston does not challenge the trial court's finding that counsel was not ineffective in this appeal.
[17] The State argues that the trial court considered all the evidence throughout the proceedings and determined that the hair evidence was merely impeachment evidence. However, as Preston argues, the State has no basis for this argument since the trial court did not expressly make this finding.
[18] Although the writ of error coram nobis was considered under the traditional "conclusiveness test," meaning "the newly discovered evidence would have conclusively prevented entry of the judgment," we recognized in Preston III "that even under the standard advocated by Justice Overton in his dissent in Hallman [v. State, 371 So.2d 482, 487 (Fla. 1979), i.e. the current Jones standard,] the existence of the newly discovered evidence in this case would not have `probably' caused the jury to find Preston innocent." Preston III, 531 So.2d at 158.
[19] In addition, Preston argues that resentencing counsel was ineffective for failing to obtain scientific testing on Preston's hair sample, which was collected in 1978, a few days after the murder, and on the syringes found in Preston's wastebasket. However, Preston concedes that this is a complementary issue that was not expressly raised and preserved for review in this appeal. See Sunset Harbour Condo. Ass'n v. Robbins, 914 So.2d 925, 928 (Fla.2005) ("In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.") (quoting Tillman v. State, 471 So.2d 32, 35 (Fla.1985)).
[20] James Russo testified that he was elected Public Defender for the Eighteenth Judicial Circuit in 1980. Thus, his office represented Mr. Preston at the time of the initial trial in 1981. After receiving the mandate for resentencing, Mr. Russo decided that he and Chief Assistant Marlene Alva would handle the case. Prior to the 1991 resentencing, Mr. Russo's background included prosecuting three to five capital homicide cases as an assistant state attorney and defending five to eight cases as a public defender. Before being assigned to Mr. Preston's case, Ms. Alva, now Judge Alva, testified that her trial experience included between six and a dozen capital cases. She also had substantial defense experience in handling mental health issues in both capital and noncapital trials.
[21] Preston simultaneously appeals the trial court's denial of the underlying claims in habeas issues (1) and (2). See supra p. 796, note 10 (denying Ring claim); and p. 796, note 12 (denying equal protection/due process claim).
[22] Specifically, Preston raises several subissues concerning the standard jury instructions on the course of a felony (kidnapping) aggravator, arguing that the instruction violates Caldwell and is invalid because it is vague and that the aggravator itself is invalid because it is automatic. Although Preston raised each of these subissues along with his general Caldwell claim as separate claims in his motion for postconviction relief, see supra note 6 (claims 14, 19, and 20), he now treats them as a single Caldwell claim in his habeas petition. However, he does not appeal the trial court's denial of his Caldwell-based claims.
[23] See supra note 6, claims 8, 14, 19, 20, and 42.