DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROGER DAWSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-2416

[June 8, 2016]

Appeal of order denying rule 3.850 motion from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Robert L. Pegg, Judge; L.T. Case No. 312004-68-CF.

Benjamin S. Waxman of Robbins, Tunkey, Ross, Amsel, Raben & Waxman, P.A., Miami, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Jeanine Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.

**ON MOTION FOR REHEARING**

PER CURIAM.

Roger Dawson appeals an order denying his rule 3.850 motion after an evidentiary hearing. This court affirmed per curiam. *Dawson v. State*, No. 4D14-2416 (Fla. 4th DCA Mar. 10, 2016). Dawson has moved for rehearing or to write an opinion. We grant his motion in part, by writing this opinion to explain the basis for our affirmance. As discussed below, we conclude the post-conviction court did not err in denying Dawson's motion claiming newly discovered evidence.

Dawson was charged with sale or delivery of cocaine within 1000 feet of a church (count I), and possession of cocaine (count II), occurring in 2003. Testimony was presented at his jury trial that a deputy of the Indian River County Sheriff's Office was conducting a "buy-walk" operation, in which an undercover officer goes into an area to make drug transactions, sometimes with a confidential informant (C.I.), then leaves

with the drugs. The arrest is made later for the safety of the undercover officer and the confidential informant.

The deputy provided an undercover detective with money for the buy and a vehicle equipped with a video camera. The detective testified that he and a C.I. drove into a certain area and went down a street where there was a group of men. The detective parked on the side of the street and within a few seconds a man approached the passenger side. The video camera recorded a brief conversation between him and the C.I. The C.I. can be heard using slang to request a quarter of an ounce of cocaine. The first man left and a few seconds later, a second man, allegedly Dawson, approached the car. A conversation ensued, and the second man told the detective and the C.I. to come back in a little bit. The second conversation also was captured on videotape.

When they returned, the detective parked thirty to forty feet from where the men were standing and gave the C.I. two hundred dollars. The C.I. got out of the car and walked across the street to the group of men. The detective remained in the car. Watching from the rearview and side mirrors, the detective testified, he saw the C.I. hand the second man the money and receive a small object in exchange, but was too far away to see exactly what it was or to hear their conversation. The C.I. returned to the car and handed the detective a baggie with a substance in it which later was confirmed to be cocaine. The drug transaction occurred in the vicinity of a church. Apparently, the transaction itself was not captured on videotape. Dawson was arrested about three months later.

Before trial, the State voluntarily disclosed the C.I.'s name but told the judge the State did not know his whereabouts, and that he would not be a state witness.

During trial, Dawson's principal defense was that the detective was mistaken that he was the man who sold the C.I. the drugs. Dawson was found guilty as charged and was sentenced to forty years in prison as a habitual felony offender for count I, and to five years in prison for count II. This court affirmed the convictions, but reversed the consecutive sentences to be run concurrently. *Dawson v. State*, 951 So. 2d 931, 934 (Fla. 4th DCA 2007).

In February 2013, Dawson filed the instant rule 3.850 motion, claiming newly discovered evidence. He had located the C.I. and obtained an affidavit from him, which he attached, contradicting only some of the detective's testimony. In the affidavit, the C.I. confirmed that, on the date in question, he and the detective went to the area to

2

obtain a quarter ounce of cocaine, and that the C.I. told an unknown male to tell "Roger" he needed a quarter. Dawson appeared and spoke to the C.I., but there was no transaction. The detective and the C.I. went to another location, then returned. The C.I. exited the car with the detective's money and walked to a spot where eight or nine men were congregated. There, he picked up a packet of cocaine from a pallet and left his money on it. He denied giving Dawson money and denied that Dawson gave him cocaine. He had no conversation with Dawson when he took the cocaine and left the money. He denied that Dawson sold him cocaine in a hand-to-hand transaction.

The C.I. noted that a defense investigator had contacted him in 2009, but at the time he declined to share these facts, fearing retaliation from the police. Over the years, he heard he was responsible for Dawson's having gone to prison and that police falsely claimed that he (the C.I.) had bought the cocaine from Dawson in a hand-to-hand transaction. This troubled him. In June 2012, he was contacted by a relative of Dawson's who implored him to cooperate with Dawson's lawyer and tell the truth. On June 9, 2012, the C.I. told Dawson's attorney the facts contained in the affidavit.

Dawson maintained the C.I.'s testimony was unavailable to him until the C.I. decided to provide it in June 2012; Dawson could not have procured it earlier.

At the evidentiary hearing, the C.I. acknowledged arranging with Dawson to purchase the cocaine, and testified, consistent with his affidavit, that he retrieved it from a pallet in a field and left $200 there. He knew to get the cocaine from the pallet because everyone's eyes were looking at the pallet. Although Dawson was present in the area, the C.I. insisted there was no hand-to-hand transaction between him and Dawson. He acknowledged that, until he was approached within the previous year by Dawson's relative, he did not tell anyone else about finding the cocaine on a pallet and putting the money there.

The deputy testified that after the alleged transaction, he debriefed both the detective and the C.I. separately, and they both stated unequivocally that there was a hand-to-hand exchange of money and cocaine between Dawson and the C.I. The deputy also spoke to the C.I. just before the hearing, and the C.I. told him that Dawson's nephew was harassing him; that was the only reason he signed the affidavit. The detective testified he was absolutely certain there was a hand-to-hand transaction between Dawson and the C.I. on the date in question.

3

The deputy also testified that after the incident, the C.I.'s cell phone had been disconnected and he had moved without leaving a forwarding address. There was testimony concerning what efforts each side made to reach the C.I. before and after the trial.

Following the hearing, the post-conviction court denied the motion. As it recognized, two requirements must be met to set aside a conviction on the basis of newly discovered evidence:

> First, in order to be considered newly discovered, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence." *Torres-Arboleda v. Dugger*, 636 So. 2d 1321, 1324-25 (Fla. 1994).
>
> Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. *Jones [v. State]*, 591 So. 2d [911,] 911, 915 [Fla. 1991]. To reach this conclusion the trial court is required to "consider all newly discovered evidence which would be admissible" at trial and then evaluate the "weight of both the newly discovered evidence and the evidence which was introduced at the trial." *Id.* at 916.

*Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998) (first alteration in original).

The post-conviction court found Dawson met neither prong. First, it found there was no evidence that the defense had attempted to locate the C.I. prior to trial. The fact that law enforcement did not know his whereabouts did not excuse the defense from diligently performing its own search. Second, the post-conviction court found the C.I.'s testimony that there was no hand-to-hand transaction was fabricated and simply was not believable. It found the detective's testimony was compelling, and specifically found his and the deputy's testimony to be credible. Further, it noted that in the event the C.I. were to testify at a new trial that there was no hand-to-hand transaction, he could be impeached with his prior inconsistent statement that there was.

We affirm based on the second prong: the newly discovered evidence simply was not of such nature that it probably would produce an acquittal on retrial.

4

> With respect to a trial court's ruling on a newly discovered evidence claim following an evidentiary hearing, as long as the court's findings are supported by competent, substantial evidence, a reviewing court will not "substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court," *Blanco v. State*, 702 So. 2d 1250, 1252 (Fla. 1997) (quoting *Demps v. State*, 462 So. 2d 1074, 1075 (Fla. 1984)), but the court's application of law to facts is subject to de novo review. *Preston v. State*, 970 So. 2d 789, 798 (Fla. 2007).

*Pittman v. State*, 90 So. 3d 794, 814 (Fla. 2011). Here, the post-conviction court's findings of fact were supported by competent substantial evidence. In light of all the evidence, the C.I.'s testimony that there was no hand-to-hand transaction would not substantially weaken the case against Dawson and give rise to a reasonable doubt as to his culpability.[1]

*Affirmed.*

GROSS, FORST and KLINGENSMITH, JJ., concur.

---

[1] Even if a jury were to find the transaction occurred in a manner consistent with the C.I.'s current version of events, the evidence would lead to an inference that Dawson arranged to have the drugs placed on the pallet so that the C.I. could exchange money for the drugs, supporting his conviction for the more serious charge, sale or delivery of the cocaine within 1000 feet of a church.