994 So.2d 407 (2008)
Avery SOUFFRANT, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D06-2518.
District Court of Appeal of Florida, Third District.
October 22, 2008.
*408 Naphtali H. Wacks, for appellant.
Bill McCollum, Attorney General, and Nikole Hiciano, Assistant Attorney General, for appellee.
Before RAMIREZ and SALTER, JJ., and SCHWARTZ, Senior Judge.
PER CURIAM.
Avery Souffrant appeals the trial court's order denying his Florida Rule of Criminal Procedure 3.850 motion, following two evidentiary hearings. We affirm the order denying Souffrant's motion, finding that counsel's strategic decision not to cross-examine a witness regarding Souffrant's tattoo did not constitute ineffective assistance of trial counsel.
Souffrant was charged by information with armed robbery with a firearm or deadly weapon. According to the testimony of the victim, he and his friend were walking home from school on April 17, 2002, when the victim noticed two men approaching: one was Souffrant and the other was Souffrant's friend. The victim testified that Souffrant approached him and pulled out a gun and put it on the side of the victim's stomach. The victim testified that Souffrant had the gun in his left hand and "put the gun in my right side." Souffrant had a gun but his friend did not. After Souffrant held the gun to the victim, Souffrant's friend demanded that the victim give him his chain. The victim gave him the chain, as well as one or two dollars cash. Souffrant and his friend then took off running.
The victim looked at Souffrant's face and noticed his dress and "stocking cap." *409 The victim "got a good look" at Souffrant. There was nothing blocking the victim's view of Souffrant's face. The victim testified that Souffrant did not have any gold teeth and that he did not recall seeing body piercings, or tattoos, but that he had braids. He stated that Souffrant was wearing brown khaki pants and a black shirt and was "[m]aybe in his twenties." After Souffrant and his friend ran away, the victim saw them running toward a gray Cutlass with black tinted windows. They jumped in and got away. The victim was unable to read the license plate number on the car. The police were called, and the victim gave a description of what he saw to the police.
Two or three days later, the victim, his father, and his brother were driving home when they saw the same gray Cutlass with black tinted windows in which Souffrant and his friend had escaped. The victim's father turned the car around and drove past the gray Cutlass slowly. The victim again recognized Souffrant and his friend as the individuals who robbed him. After he returned home, the victim's father called the detective and informed him that the victim saw Souffrant.
About one week later, the detective came over to the victim's house to show him a photographic line-up. The detective presented the victim with a folder with different pages of photographs. There were six photographs on each page. The victim did not recognize anyone on the first page he viewed. On the second page of photographs the victim recognized Souffrant as the person who pulled the gun on him and robbed him.
At trial, Souffrant's first witness was the victim's friend. The victim's friend could not describe the man with the gun except that he was black. Souffrant also called his mother to testify. Mrs. Souffrant stated that Souffrant has had a permanent gold tooth since he was fifteen or sixteen years old.
After closing arguments, the jury convicted Souffrant of armed robbery with a firearm. The court sentenced him to life imprisonment with a ten year minimum mandatory. Souffrant's conviction and sentence were affirmed on direct appeal. Souffrant v. State, 896 So.2d 766 (Fla. 3d DCA 2004).
Souffrant thereafter filed a pro se motion for post-conviction relief pursuant to Rule 3.850. Specifically, he argued that his counsel was ineffective because he failed to cross-examine the victim about the existence of Souffrant's tattoo. Apparently, Souffrant had a tattoo on the inside of his left forearm, running from approximately an inch below the crook of his elbow down to about three or four inches above his wrist. The tattoo said "No understanding thugs" and pictured two theatrical masks, as well as the number four and the word "life" below the masks.
The court held two evidentiary hearings on Souffrant's motion for post-conviction relief. At one of the hearings, the defense called Randy Petre, Souffrant's trial attorney, to testify. Mr. Petre testified that he decided not to present the jury with any evidence of the tattoo because he thought that the jury might be offended by the content of the tattoo. He testified that he had discussed this matter with Souffrant. He further testified that both he and co-counsel thought it was a tough choice, "whether to put it on or not and we discussed it and came to the conclusion we thought it would be more prejudicial because of what it said than it would help him,". He then testified:
No. The way the case went, we actually I'm trying toI think it was after the State's case ended, we went into the jury room with my cocounsel [sic], Avery and I, and we discussedI mean, it *410 wasn't like we missed it. I mean, we knew this was an issue and discussed whether we thought it was worth putting the tattoo on. We knew we had the gold teeth contradiction, and the question was do we put the tattoo on with obviously the jury seeingcould be easily depicted as a violent tattoo and that was a violent crime, so, yeah, we knew about it.
Mr. Petre testified that he did not present evidence of Souffrant's tattoo to the jury because he felt that its prejudicial content outweighed the value of this evidence. He further testified that he and his co-counsel thought that if the jury saw the tattoo, they would think Souffrant was "living a gangster lifestyle which was consistent with what the allegations were." Mr. Petre did testify, however, that he presented evidence to the jury that Souffrant had a gold tooth or gold teeth because the victim had testified that the person who robbed him did not have gold teeth.
After considering the additional arguments, testimony, reviewing the transcripts, and evidence, the court denied Souffrant's motion for post-conviction relief. In denying the motion, the court found that all of the decisions at trial, including whether to present evidence of Souffrant's tattoo, were tactical decisions made with Souffrant's consultation. This appeal followed.
Souffrant now claims he received constitutionally ineffective assistance of trial counsel, due to various reasons, only one of which merits discussion.[1] Souffrant claims that his counsel should have cross-examined the victim with regard to his failure to describe the tattoo. We disagree. The trial court did not err in finding that counsel's decision not to cross-examine the victim regarding Souffrant's tattoo was a strategic decision that did not constitute ineffective assistance of trial counsel.
Under Strickland v. Washington, 466 U.S. 668, 687-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant seeking post-conviction relief based on ineffective assistance of trial counsel must show that (1) counsel's specific acts or omissions were "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment" and (2) prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See also Armstrong v. State, 862 So.2d 705, 711 (Fla.2003). Both performance and prejudice are mixed questions of law and fact. Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999). Accordingly, the standard of review of a trial court's ruling on an ineffective assistance claim is two-pronged: "(1) appellate courts must defer to trial courts' findings on factual issues but (2) must review de novo ultimate conclusions on the performance and prejudice prongs." Armstrong, 862 So.2d at 711.
A review of the record indicates that Souffrant has failed to meet the first prong outlined in Strickland. Regarding trial counsel's performance, there is a strong presumption that trial counsel's conduct "falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Thus, counsel is not ineffective for strategic decisions that, in hindsight, did not work to the *411 defendant's advantage. Mansfield v. State, 911 So.2d 1160, 1174 (Fla.2005). Furthermore, "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000). See also Brown v. State, 894 So.2d 137, 147 (Fla.2004); Howell v. State, 877 So.2d 697, 703 (Fla.2004). "[E]vidence that counsel's conduct was part of a deliberate, tactical strategy that the defendant understood and approved almost always precludes the establishment of this prong." Henry v. State, 948 So.2d 609, 617 (Fla.2006).[2]
Here, Mr. Petre testified at the evidentiary hearing that his analysis was that Souffrant's tattoo would be viewed by the jury as having gang connotations, and he was concerned that the jury would hold the tattoo against Souffrant. After a discussion with his co-counsel, Mr. Petre and Souffrant decided that the prejudice of presenting the tattoo to the jury outweighed any benefits. The trial court found that this was a reasonable strategic decision, and we cannot find that this strategy fell below the "wide range of professionally competent assistance" when evaluated from trial counsel's perspective at the time he suggested and Souffrant agreed to this strategy. Strickland, 466 U.S. at 690, 104 S.Ct. 2052.
Thus, Souffrant failed to satisfy the deficiency prong of Strickland, and we need not reach the prejudice prong. Consequently, we conclude that the trial court did not err in denying his claim of ineffective assistance of counsel.
Affirmed.
NOTES
[1] With respect to Souffrant's other contentions for ineffective assistance of trial counsel, we find them meritless.
[2] Furthermore, a review of ineffective assistance of counsel claims must be made from the perspective of defense counsel, taking into account all circumstances of the case as they were known to counsel at the time of the representation. United States v. Teague, 953 F.2d 1525, 1535 (11th Cir.1992). Where trial counsel's strategy is concerned, "a high degree of deference to counsel's decisions must be given." Demurjian v. State, 727 So.2d 324, 326 (Fla. 4th DCA 1999).