DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**ROBERT JEAN MORRIS,**
Appellee.

No. 4D2023-0117

[March 6, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Marina Garcia-Wood, Judge; L.T. Case No. 14-14141CF10A.

Ashley Moody, Attorney General, Tallahassee, and Luke R. Napodano, Senior Assistant Attorney General, West Palm Beach, for appellant.

Marcia J. Silvers, Miami, for appellee.

FORST, J.

The State timely appeals the grant of appellee Robert Jean Morris's ("Defendant") Florida Rule of Criminal Procedure 3.850 motion alleging ineffective assistance of trial counsel. We disagree with the trial court and reverse, concluding that Defendant's alleged errors are insufficient to meet the high bar imposed by *Strickland v. Washington*, 466 U.S. 668 (1984).

**Background**

**A. Defendant's Conviction**

Defendant was convicted for second-degree murder with a firearm and possession of a firearm with the serial number removed. Defendant was represented by two experienced criminal defense attorneys. Fred Haddad represented Defendant as lead trial counsel, with Tarlika Navarro as co-counsel. The crux of the trial centered on whether Defendant had killed Omar Khan ("Victim") in self-defense. The following evidence was adduced at trial, including from Defendant's testimony.

On the day of Victim's death, Defendant and Victim met and entered Victim's vehicle. Defendant testified that he had wanted to buy Xanax from Victim because Defendant's cousin was interested in purchasing some and because Defendant knew Victim was a drug dealer since he had previously purchased Xanax from him. Defendant also acknowledged he was carrying a gun, explaining he did so for protection.

Defendant claimed that, after meeting up with Victim, Defendant realized he still owed Victim for a prior drug purchase. Defendant further contended that Victim had threatened him with a gun before over a drug debt, so Defendant wanted to reimburse Victim quickly. Thus, when they met up, Victim drove them to Defendant's bank so that Defendant could withdraw cash. Defendant deposited money into his account, which had a negative balance, but even after this deposit, Defendant allegedly did not have enough funds to reimburse Victim.

When Defendant returned to Victim's car without money (per Defendant), he and Victim started arguing. A police officer testified that a man who did not speak English (later identified as Y.L.) overheard what he characterized as an argument. However, no witness other than Defendant directly observed what happened in Victim's car. No witness testified to hearing any gunshots. The bank also did not have exterior cameras.

Defendant claimed that he was forced to shoot Victim in self-defense. Defendant alleged that Victim pulled out a gun and began to threaten him. Defendant stated that he managed to open the door in an attempt to exit the vehicle. He further testified that once the door was open, Victim grabbed him and refused to let him leave. Defendant maintained he grabbed Victim's gun, and then pulled his own gun out of his pocket and shot Victim twice. Other than Defendant's testimony about what happened in the car and Y.L. hearing what appeared to be an argument, there was no direct evidence supporting Defendant's version of events.

After Defendant shot Victim, a second witness saw Defendant crouching outside Victim's car and trying to hide a gun in his pants. Defendant then ran away from the bank, and as he reached the end of the parking lot, his cousin drove up in Defendant's car. Defendant jumped in the front seat, and the car sped off into a neighboring parking lot where one of the two men threw the gun from the car before speeding onto the main road.

At the same time, Victim stepped out of his car, disoriented. The second witness attempted to help him and offered to call for help, but Victim told the witness not to call the police. He then went into his car and drove

2

toward his house, a short distance from the bank. Shortly after Victim left the bank, a motorist saw him driving erratically with his windows up, and the motorist began following Victim's car. The motorist saw Victim clip a passing car and testified that she never saw Victim throw a weapon out of the vehicle. After Victim finally made it home, a 911 call was made, and Victim died after EMTs took him to the hospital.

Meanwhile, one of the officers spotted Defendant's car heading in the opposite direction and conducted a traffic stop. Officers noticed that Defendant had tried to put on a shirt over the one which he had been wearing while making the bank deposit. Police eventually recovered the gun used to shoot Victim in the parking lot across from the bank. The gun's serial number appeared to have been removed. The police did not discover any other weapons.

Defendant was tried before a jury and was found guilty on both counts—second-degree murder with a firearm and possession of a firearm with the serial number removed. Defendant appealed the conviction, and this Court affirmed. *Morris v. State*, 232 So. 3d 1031 (Fla. 4th DCA 2017) ("*Morris I*").

## B. Defendant's Rule 3.850 Motion

Defendant then filed a rule 3.850 motion where he argued ineffective assistance of counsel, and the trial court held an evidentiary hearing.[1]

At the hearing, Haddad and Navarro testified, both agreeing that as the lead attorney on the case, Haddad primarily controlled trial strategy. Haddad is an experienced criminal attorney. At the time of the hearing, Navarro, now Nunez-Navarro, was a sitting Circuit Judge for the Ninth Judicial Circuit.

Defendant raised four pertinent grounds in his motion.[2]

### 1. Failing to Call Y.L. as a Witness

---

[1] The post-conviction court originally summarily denied the motion, but this Court reversed and remanded for the trial court to explain the rationale for its decision or to attach the portions of the record conclusively refuting the claims. *See Morris v. State*, 287 So. 3d 634, 635 (Fla. 4th DCA 2020) ("*Morris II*").

[2] Defendant raised an additional ground that was denied by the trial court and is not raised by either party in this appeal.

First, Defendant argued Haddad should have called Y.L. as a witness. Y.L. was the man whom an investigating officer testified had heard and viewed what appeared to be an argument. At trial, the prosecution pointed out in its closing that not a single witness heard gunshots, which made it likely that Victim's car door was not opened, directly contradicting Defendant's version of the events. Defendant argued that had Y.L. been called as a witness, he would have testified to hearing gunshots, which would have prevented the prosecution from making this "doors not opened" argument in closing.

At the post-conviction evidentiary hearing, Y.L. explained, through an interpreter, that he was at the bank on the date of Victim's death. When he arrived at the bank, he parked two spaces away from Victim's car and heard two men in that car "arguing"—they were "loud" and "it look[ed] kind of aggressive." However, as he only spoke Mandarin Chinese, he could not understand what the men were saying. Y.L. exited his car and walked towards the bank. While he was in the empty parking space between his car and Victim's car, and while he was facing directly opposite Victim's car, he heard two gunshots. He then saw Victim emerge from his car, walk toward the bank, and then return to his car and drive off. He explained that he saw Victim "screaming, and he look[ed] very painful, and he put his hand on his leg." He did not see Victim holding a gun.

Haddad explained that he chose not to call Y.L. because of his trial strategy. Haddad felt that the only important part of Y.L.'s testimony was that Y.L. had heard the arguing, not that Y.L. had heard the shots. Haddad also preferred that the information come out in cross-examination of the officer who questioned Y.L. as opposed to direct, as he could "lead" the officer during cross-examination. Haddad testified he was concerned that if he had put Y.L. on the stand, the prosecutor would be able to admit sympathetic evidence about the aftermath of Victim being shot.

The post-conviction court found that Haddad was deficient for not calling Y.L. as a witness. The post-conviction court determined that Y.L.'s testimony about gunshots would have caused the prosecution to alter its closing argument, which would have lessened the jury's view of Defendant as a liar. The post-conviction court also concluded that Defendant's self-defense theory would have been furthered by Y.L.'s testimony about the heated argument. Finally, the post-conviction court found it "highly questionable" whether putting Y.L. on the stand would have caused the jury to sympathize with Victim.

2. *Failing to Investigate Victim's Friend, J.W.*

4

Second, Defendant argued that counsel was ineffective in how he handled J.W. J.W. was Victim's friend who had spoken to two detectives and provided a statement under oath that (1) he did not know Victim to possess any weapons; (2) Victim used to deal drugs a few years prior in Miami; (3) Victim was not a violent person; (4) Victim exchanged drugs with J.W. for favors; and (5) Victim stole J.W.'s Xanax the day before the shooting. Defendant claimed J.W. was an important witness because J.W. was the only witness whose testimony could support Defendant's claim that he met up with Victim to buy drugs.

Before trial, Haddad had initially set J.W. for a deposition, but noticed J.W. for the wrong address and J.W. did not appear. Haddad originally was not going to have J.W. testify, because another witness could have confirmed that Victim was selling Defendant drugs. But this witness overdosed prior to trial and died. After the preferred witness died, Haddad had a private investigator track down J.W., but Haddad decided against deposing him. Haddad reasoned that the statement which J.W. had given to the two officers was under oath and was sufficient, given that all of J.W.'s pertinent testimony was in the statement.

On the day of the trial, J.W. showed up to the courthouse, where Haddad claimed J.W. told Haddad he would testify that Victim and Defendant were engaged in a drug deal. The prosecution objected to J.W. testifying, arguing that J.W. could provide only bad character evidence against Victim. Haddad argued that the prosecution was attempting to make the shooting look random when it was actually a botched drug deal. The trial court determined that testimony concerning a drug deal between Defendant and Victim was relevant. The trial court reviewed J.W.'s pre-trial statement and asked Haddad where the statement showed that Victim was a drug dealer. Haddad's response did not reference the correct page in J.W.'s statement which explicitly stated that Victim sold drugs. Instead, Haddad referenced a different page and directed the court to infer from J.W.'s statement that Victim sold drugs.

Haddad proffered J.W.'s testimony, but J.W. testified that he did not know Victim to sell drugs, he did not make any definitive statements to Haddad outside the courtroom, and *he* had asked Haddad if Victim's death was over a drug deal. Based on the proffer, the trial court determined that J.W. could not testify and Defendant could not elicit testimony from other witnesses about J.W.

Defendant's post-conviction motion argued that Haddad was ineffective for failing to depose J.W., to hire an investigator to investigate J.W.'s

statement, to point the trial court to the proper pages of J.W.'s statement, and to confront J.W. with his prior statement on the witness stand.

At the evidentiary hearing, Haddad explained that he wanted a witness to testify that Victim had been a drug dealer to help explain why Defendant and Victim had met on the day in question. But Haddad was concerned with calling J.W. because J.W. might testify he had never heard of Victim owning a gun and had only heard of Victim dealing drugs in Miami, years prior to his death. Haddad also admitted he wanted to call J.W. to malign Victim's character.

The post-conviction court found that Haddad was ineffective for failing to depose J.W. and failing to cite the proper pages of J.W.'s statement.

### 3. Failing to Object to a Prejudicial Video

Third, Defendant argued that counsel was ineffective for failing to object to a video's admission as evidence. The nineteen-second video depicts Defendant smoking a cigarillo and waving a gun around, pointing it at the camera.

Prior to trial, a detective ran an investigation into Defendant's phone and recovered several videos and photos from the device. During the detective's testimony, the State sought to introduce into evidence the video and some other photos. Haddad objected to some of the photos, arguing prejudice; some of his objections were overruled, thus exposing the jury to the photos. Haddad did not initially object to the video.

However, when the video began playing for the jury, Haddad objected, without specifying a basis. He argued that the State needed to show him the video first and requested that the evidence be censored. The trial court overruled the objection and allowed the full video to be played for the jury.

The post-conviction court found that because no expert was called to verify that the gun in the video was the same one used to shoot Victim, the probative value of the evidence was not substantially outweighed by unfair prejudice. The post-conviction court also found that counsel was deficient for failing to object or file a motion in limine, because this failed to preserve the issue for appellate review.

### 4. Cumulative Error and New Trial

Finally, Defendant argued that cumulative error resulted from the above-mentioned errors. The post-conviction court agreed. Having found

6

that Haddad and Navarro provided Defendant ineffective assistance of counsel, the post-conviction court granted Defendant's motion for a new trial. This timely appeal followed.

## Analysis

### A. *Strickland* Review

"Because both prongs of the *Strickland* test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings as long as they are supported by competent, substantial evidence and reviewing the legal conclusions de novo." *Wickham v. State*, 124 So. 3d 841, 858 (Fla. 2013).

Under *Strickland v. Washington,* 466 U.S. 668, 694 (1984), an ineffective assistance of counsel claim requires that (1) counsel was deficient and (2) counsel's deficiency prejudiced the defendant. "Because *Strickland* requires a defendant to establish both prongs, if one prong is not met, 'the court is not required to analyze whether the defendant has established the other prong.'" *Hilton v. State*, 326 So. 3d 640, 648 (Fla. 2021) (quoting *Frances v. State,* 143 So. 3d 340, 347 (Fla. 2014)).

"A legitimate ineffective assistance of counsel claim is rare." *Cortes v. State*, 85 So. 3d 1135, 1137 (Fla. 4th DCA 2012). Indeed, "[a]n ineffective assistance of counsel claim is reserved for serious errors that impact the fundamental fairness of a criminal trial." *Id.* And "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington v. Richter,* 562 U.S. 86, 111 (2011).

"[T]o establish deficient performance under *Strickland*, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness' based on 'prevailing professional norms.'" *Preston v. State*, 970 So. 2d 789, 803 (Fla. 2007) (quoting *Strickland*, 466 U.S. at 688). The defendant must "identify particular acts or omissions of the lawyer." *Franklin v. State,* 137 So. 3d 969, 980 (Fla. 2014) (quoting *Ferrell v. State,* 29 So. 3d 959, 969 (Fla. 2010)). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Jean v. State,* 41 So. 3d 1078, 1080 (Fla. 4th DCA 2010) (alteration in original) (quoting *Strickland*, 466 U.S. at 690); *State v. Duncan*, 894 So. 2d 817, 823 (Fla. 2004). "Counsel is entitled to even greater deference when he or she is highly experienced." *Patrick v. State*, 302 So. 3d 734, 741 (Fla. 2020).

To establish the prejudice prong under *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *State v. Morrison*, 236 So. 3d 204, 213 (Fla. 2017) (quoting *Strickland*, 466 U.S. at 693).

When examining the prejudice caused by counsel's errors, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Preston*, 970 So. 2d at 803 (quoting *Strickland*, 466 U.S. at 689). Indeed, "the reviewing court must consider all the evidence—the good and the bad—when evaluating prejudice." *Wong v. Belmontes*, 558 U.S. 15, 26 (2009).

However, a defendant does not need to show that the "deficient conduct more likely than not altered the outcome in the case." *McCullough v. State*, 327 So. 3d 955, 958 (Fla. 5th DCA 2021) (quoting *Strickland*, 466 U.S. at 693). Nonetheless, "the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Harrington*, 562 U.S. at 112 (quoting *Strickland*, 466 U.S. at 697). "The likelihood of a different result must be substantial, not just conceivable." *Id.*

## B. Defendant's Trial Counsel was not Deficient Regarding Y.L.

Defendant convinced the post-conviction court that Haddad was deficient in failing to call Y.L. as a witness because that decision allowed the prosecution to argue in closing that no witness heard gunshots; Y.L.'s testimony would have aided Defendant's credibility; and placing Y.L. on the stand would not cause the jury to be sympathetic towards Victim.

As Haddad explained that not calling Y.L. was part of his trial strategy, we must determine whether that choice was reasonable. *See Henry v. State*, 948 So. 2d 609, 617 (Fla. 2006); *Burkhalter v. State*, 279 So. 3d 314, 316 (Fla. 1st DCA 2019) ("Whether to call a witness at trial is the type of strategic decision for which the lawyer's professional judgment is generally not subject to postconviction second-guessing . . . ." (alteration in original) (quoting *Ferguson v. State*, 101 So. 3d 895, 897 (Fla. 4th DCA 2012))).

Before the post-conviction court, Defendant had the burden to overcome "the presumption that, under the circumstances, the challenged

action 'might be considered sound trial strategy.'" *Souffrant v. State*, 994 So. 2d 407, 410 (Fla. 3d DCA 2008) (quoting *Strickland*, 466 U.S. at 689); *see also Mansfield v. State*, 911 So. 2d 1160, 1174 (Fla. 2005) ("[A]n attorney is not ineffective for decisions that are a part of a trial strategy that, in hindsight, did not work out to the defendant's advantage."). This test only requires trial counsel to choose between reasonable alternatives to not be ineffective. *See Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000).

Here, Haddad's strategic decision not to call Y.L. as a witness was reasonable. To Haddad, Y.L.'s testimony was useful only to the extent it supported Defendant's statement the two men were arguing prior to Defendant shooting Victim. However, Haddad believed he was better at cross, so he elected to have a State's witness testify on cross that Y.L. had told the officer about having observed what had appeared to be Defendant and Victim arguing. Counsel is not deficient for not presenting duplicative evidence. *See Smithers v. State*, 18 So. 3d 460, 470–71 (Fla. 2009); *Farina v. State*, 937 So. 2d 612, 624 (Fla. 2006); *Valle v. State*, 705 So. 2d 1331, 1334–35 (Fla. 1997).

Haddad could have also reasonably concluded that Y.L.'s own testimony was not necessary because Y.L. did not speak English and therefore could not have testified to what the men said. Haddad also reasonably believed that his theory of the case did not depend on anyone hearing the gunshots. That Defendant shot Victim was undisputed. And Y.L. did not see the shots because he was facing the bank, nor did he see Victim with a gun. He could not corroborate Defendant's statement that Defendant had tried to open the car door before shooting Victim. Moreover, the fact that Y.L. had heard the gunshots does not imply that Defendant's car door was open—Y.L. also had heard the individuals speaking loudly before any altercation and prior to when Defendant claimed he opened the door.

Finally, Haddad's concern that calling Y.L. as a witness would have elicited sympathetic evidence was not unreasonable, as Y.L. would have testified that he observed Victim after the shooting, screaming and in pain, and that he did not see Victim holding a gun.

Given the high degree of deference afforded to trial counsel, the failure to call Y.L. as a witness was not so objectively unreasonable to constitute constitutionally defective counsel. *See Harrington*, 562 U.S. at 110 ("*Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."); *Derrick v. State*, 983 So. 2d 443, 459 (Fla. 2008) (holding that counsel was not

9

ineffective, and noting that counsel's "decision was not made out of ignorance").

## C. Defendant was not Prejudiced by Trial Counsel's Handling of J.W.

Defendant convinced the post-conviction court that Haddad's failure to investigate, depose, and confront J.W. prevented Defendant from presenting evidence that Victim sold drugs; J.W. had obtained Xanax pills from Victim; and Victim had stolen J.W.'s Xanax shortly before the shooting.

We need not address the deficiency prong of this argument, because it is apparent that Defendant was not prejudiced. *See Frances*, 143 So. 3d at 347 ("Even assuming that defense counsel was deficient . . . [the defendant] has failed to demonstrate that he was prejudiced . . . .").

First, to the extent Defendant wanted to call J.W. as a witness to testify that Victim gave J.W. drugs or that Victim stole J.W.'s Xanax, this was inadmissible character evidence. *See Munoz v. State*, 45 So. 3d 954, 956 (Fla. 3d DCA 2010). In fact, Haddad explained that he had wanted to call J.W., in part, to malign Victim's character. *See Owen v. State*, 986 So. 2d 534, 546 (Fla. 2008) ("Trial counsel cannot be deemed ineffective for failing to present inadmissible evidence.").

Second, to the extent that Defendant wanted to call J.W. to testify that Defendant and Victim were engaged in a drug deal, the prosecution admitted in rebuttal closing argument that Victim was "probably" selling drugs to Defendant on the day of Victim's death. Given this concession, Haddad no longer needed to call a witness to testify that Defendant was trying to buy drugs from Victim.

Finally, calling J.W. as a witness would have elicited damaging evidence against Defendant. If evidence can be a double-edged sword, it will not support a finding of prejudice. *See Diaz v. State*, 132 So. 3d 93, 109 (Fla. 2013) ("[C]ounsel is not ineffective for deciding not to call a witness whose testimony will be harmful to the defendant."). Defendant testified that Victim had a gun, but J.W. was Victim's friend and might have testified, consistent with his proffer, that he had never known Victim to own a firearm.

Thus, counsel's failure to have J.W. testify did not prejudice Defendant.

## D. Trial Counsel was not Deficient Regarding the Video

Regarding the video's admission, the post-conviction court also found that counsel was deficient for failing to object or file a motion in limine, because this failed to preserve the issue for appellate review.

The question is whether an appellate court would have found reversible error if Haddad had properly objected. *See Boyd v. State*, 200 So. 3d 685, 699 (Fla. 2015) ("[C]ounsel cannot be deemed ineffective for failing to make a meritless argument." (quoting *Long v. State*, 118 So. 3d 798, 805 (Fla. 2013))); *Hitchcock v. State*, 991 So. 2d 337, 348 (Fla. 2008) (holding that where counsel does object, deficiency is a question of "how much counsel could have been reasonably expected to push for the admissibility of th[e] evidence").

As to relevance under section 90.401, Florida Statutes (2016), "[r]elevant evidence is evidence tending to prove or disprove a material fact." "Generally, any evidence relevant to prove a material fact at issue is admissible unless precluded by a specific rule of exclusion." *Eliakim v. State*, 884 So. 2d 57, 60 (Fla. 4th DCA 2004). Here, Defendant was charged with possession of a firearm with an altered or removed serial number. *See* § 790.27(2)(a), Fla. Stat. (2014). This makes the video depicting Defendant holding a firearm like the one used to shoot Victim relevant. *See Council v. State*, 691 So. 2d 1192, 1194–95 (Fla. 4th DCA 1997) (expert testimony not necessary to make photo of a firearm relevant because common characteristics can establish a firearm's probative value); *see also Gosciminski v. State*, 132 So. 3d 678, 701 (Fla. 2013) ("A photograph's admissibility is based on its relevancy, not its necessity.").

As to unfair prejudice under section 90.403, Florida Statutes (2016), evidence should be excluded where its probative value is substantially outweighed by the danger of unfair prejudice. *See Denmark v. State*, 927 So. 2d 1079, 1081–82 (Fla. 2d DCA 2006). We recognize that the video's probative value is low because Defendant did not dispute that he shot Victim with the gun and because the serial number of the gun is not visible in the video. *See Smiley v. State*, 295 So. 3d 156, 168 (Fla. 2020) (photo was highly probative under section 90.403 because a photo went to material issues surrounding the identity and appearance of the accomplice pictured in the photo).

However, the video had a lessened prejudicial value because other photos were admitted into evidence, over defense counsel's objections, that also depicted Defendant smoking cigarillos while flaunting a gun similar to the one used to shoot Victim. *Cf. Torrez v. State*, 294 So. 3d 390, 405 (Fla. 4th DCA 2020) (evidence was not unduly prejudicial in light of the

11

state's other evidence); *Floyd v. State*, 808 So. 2d 175, 184 (Fla. 2002) ("While a trial court should exercise caution in admitting particularly gruesome photographs, and in limiting their numbers, such photographs may still be relevant." (quoting *Larkins v. State*, 655 So. 2d 95, 98 (Fla. 1995))).

If the trial court would have admitted the video into evidence over a proper objection, the appellate court would likely have either determined no abuse of discretion or found harmless error given the other photos admitted as evidence.  *See Taylor v. State*, 640 So. 2d 1127, 1135 (Fla. 1st DCA 1994) (finding that a video was needlessly repetitive and therefore inadmissible because it depicted the same scenes as other admitted photographs; the court added that "we would not reverse this cause based solely on the cumulative photographic evidence").

Accordingly, trial counsel was not deficient by failing to object to the admission of the video.

## D. Cumulative Error

As we have determined that Haddad was not deficient and that any deficiency did not prejudice Defendant, Defendant's cumulative error argument fails.  *See Bradley v. State*, 33 So. 3d 664, 684 (Fla. 2010).

## Conclusion

For the reasons set forth above, the post-conviction court erred in concluding that Defendant's trial counsel was ineffective per *Strickland*'s exacting standards.  Trial counsel were both experienced attorneys and entitled to a presumption that they acted reasonably.  A review of the trial transcript shows that counsel provided Defendant adequate and zealous representation before and during the trial.  Defendant's trial counsel's alleged errors, even if true, do not turn what is merely a "conceivable effect on the outcome of the proceeding" into a "[substantial] likelihood of a different result," as required by *Strickland* and *Harrington*.  We therefore reverse the trial court's grant of Defendant's rule 3.850 motion.

*Reversed.*

WARNER and DAMOORGIAN, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

12